UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMETRA BRICE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>7HBF NO. 2, LTD., et al.,<br><br>Defendants. | Case No. 19-cv-01481-WHO<br><br>**ORDER DENYING MOTION TO STAY PENDING ARBITRATION, MOTION TO COMPEL ARBITRATION, AND MOTION TO TRANSFER**<br><br>Re: Dkt. Nos. 24, 25, 27 |

Plaintiffs Kimetra Brice, Earl Browne, and Jill Novorot bring this class action case against defendants alleging that the loans they took out from entities controlled, managed, or funded by defendants were usurious and illegal under California and federal law. Defendants have, in response, filed three motions that are pending before me. The first is a motion brought by defendants Sequoia Capital Operations, LLC, Sequoia Capital Franchise Partners, L.P., Sequoia Capital IX, L.P., Sequoia Capital Growth Fund III, L.P., Sequoia Entrepreneurs Annex Fund, L.P., Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Franchise Fund, L.P, and Sequoia Capital Growth Partners III (collectively, "Sequoia") to stay this case pending arbitration. The second is a motion brought by defendants Mike Stinson, Linda Stinson, The Stinson 2009 Grantor Retained Annuity Trust, 7HBF No. 2, Ltd., Startup Capital Ventures, L.P., and Stephen J. Shaper (collectively the "Shareholder Defendants") to compel arbitration. The third is a motion brought by both the Sequoia and the Shareholder Defendants to transfer to transfer this case to the Northern District of Texas.

Consistent with my prior ruling in the materially similar case *Brice et al. v. Rees et al.*, Case No. 18-cv-1200-WHO, and consistent with the majority of federal district courts and all

circuit courts who have considered materially similar loan agreements, defendants' motions to stay, compel arbitration, and transfer are DENIED.

**BACKGROUND**

Plaintiffs allege that an entity called Think Finance, LLC and its subsidiaries (collectively "Think Finance") "operated a rent-a-tribe scheme, which sought to evade the usury laws of certain states by using the Chippewa Cree, Otoe-Missouria, and Tunica-Biloxi Tribe (collectively, the 'Tribes') as the conduit for their loans." Compl. ¶ 2. "Under the rent-a-tribe model, loans were made in the name of Plain Green, LLC, Great Plains Lending, LLC, and Mobiloans, LLC." *Id*. ¶ 3. Plaintiffs allege generally that defendants "are the owners and investors of Think Finance and received the proceeds of its illegal enterprise. Through their ownership of Think Finance, Defendants participated in the business's key decisions, strategies, and objectives and, in return, generated large profits from their ownership interest in Think Finance. Defendants personally participated in and oversaw the illegal lending enterprise rendering them personally liable to consumers." *Id*. ¶ 4.

<u>Shareholder Defendants</u>. Defendant Mike Stinson is alleged to be the founder of Think Finance and owner of between 15-25% of the interest in Think Finance. *Id*. ¶ 13. Linda Stinson is alleged to have "operated and participated in the affairs of the rent-a-tribe lending scheme as a board of director of Think Finance and she received proceeds from the usurious loans through her joint ownership of Think Finance with her husband." *Id*. ¶ 14. Defendant The Stinson 2009 Grantor Retained Annuity Trust is alleged to be a trust created for the benefit of the Stinsons and through which the Stinsons "participated in the control of Think Finance and received a large distribution of their profits in Think Finance in the form of shares in Elevate, a publicly traded company that Think Finance spun-off to try to launder the profits of its unlawful enterprise." *Id*. ¶ 15. Defendant 7HBF NO. 2, LTD. ("7HBF") is alleged to have "owned at least 20% of the interest in Think Finance" and through "its ownership of Think Finance, 7HBF operated and participated in the affairs of the rent-a-tribe lending scheme and had direct personal involvement in the creation and day-to-day operations of the illegal enterprise." *Id*. ¶ 16. Defendant Startup Capital Ventures, L.P. ("SCV") is alleged to be a venture capital firm that "owned a material

interest in Think Finance" and through "its ownership of Think Finance, SCV operated and participated in the affairs of the rent-a-tribe lending scheme and had direct personal involvement in the creation and day-to-day operations of the illegal enterprise." *Id*. ¶ 25. Finally, defendant Stephen J. Shaper is alleged to be a "direct and/or indirect" owner of Think Finance who "operated and participated in the affairs of the rent-a-tribe lending scheme and had direct personal involvement in the creation and day-to-day operations of the illegal enterprise." *Id*. ¶ 26.

<u>Sequoia Defendants</u>. Defendant Sequoia Capital Operations, LLC ("SCO") is alleged to be a venture capital firm that "owned approximately 25% of the interest in Think Finance" and through its ownership of Think Finance "Sequoia operated and participated in the affairs of the rent-a-tribe lending scheme and had direct personal involvement in the creation and day-to-day operations of the illegal enterprise." *Id*. ¶ 17. SCO is alleged to have used defendants Sequoia Capital Franchise Partners, L.P., Sequoia Capital IX, L.P., Sequoia Capital Growth Fund III, L.P., Sequoia Entrepreneurs Annex Fund, L.P., Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Franchise Fund, L.P., and Sequoia Capital Growth Partners III, L.P. to "to receive a large distribution of its profits in Think Finance in the form of shares in Elevate, a publicly traded company that Think Finance spun-off to try to launder the profits of its unlawful enterprise" and each "would have held shares of Think Finance and participated in its management and control." *Id*. ¶¶ 18-24.

Plaintiff Brice is alleged to have "paid no less than $2,634.40 on her loans with Great Plains, most of which was credited to interest and fees." SAC ¶ 117. Plaintiff Browne is alleged to have "paid no less than $10,250.20 on his loans with Plain Green and Great Plains—most of which was credited to interest and fees." *Id*. ¶ 118. Plaintiff Novorot is alleged to have "paid no less than $6,244 on her loans with Great Plains, including a payment of $65 in the last year, most of which was credited to interest and fees." *Id*. ¶ 119.

Based upon these allegations, plaintiffs assert claims on behalf of a class of California consumers who took out similar loans under: (i) the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (ii) California's usury laws; (iii) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*; and (iv) unjust

enrichment. Defendants move to stay and compel arbitration or, in the alternative, transfer this case to the Northern District of Texas where bankruptcy proceedings are pending against Think Finance.

In the related case, *Brice et al. v. Rees et al.*, Case No. 18-cv-01200, I addressed the enforceability of the same exact arbitration agreements (Arbitration Agreements) in the same loan agreement forms at issue in this case. There, after exhaustively considering the full text of the agreements as well as the relevant case law, I concluded that the "Plain Green and [Great Plains Lending] arbitration agreements are unenforceable because they are prospective waivers of plaintiffs' rights and remedies." March 2019 Order at 1. In addition to arguing that I reached the wrong conclusion in my prior Order, defendants in this case argue that because I did not consider specific cases or arguments, I should reconsider and conclude that the Arbitration Agreements are enforceable and grant these defendants' motions to stay and compel arbitration. In the alternative, defendants also bring a motion to transfer this case to the Northern District of Texas where bankruptcy proceedings are pending concerning Think Finance. Plaintiffs oppose all three motions.

## DISCUSSION

### I. MOTIONS TO STAY AND COMPEL ARBITRATION

The Sequoia Defendants move to stay proceedings, arguing that arbitration is required given plaintiffs' agreements to arbitrate disputes regarding the loans they took out. The Shareholder Defendants move to compel arbitration based on those same Arbitration Agreements. For the reasons that I explained in detail in the related case while considering the same exact Arbitration Agreements defendants seek to enforce here, the Agreements are unenforceable. Defendants' motion to stay and motion to compel are DENIED.

#### A. Legal Standard

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 et seq. Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an

4

arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24–25 (1983).

The question of whether the arbitration agreement is valid is itself arbitrable. *Rent-a-Center, West Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Where a party seeks to challenge arbitrability in court, the party must specifically challenge the validity of the delegation provision, rather than "the validity of the contract as a whole." *Id*. at 72. Although arbitration agreements are generally enforceable under the FAA, they must not contravene public policy. *M/S Bremen v. Zapata Offshore Co*., 407 U.S. 1, 15 (1972). An agreement is unenforceable (i) when the arbitration agreement acts as a prospective waiver of statutory rights and remedies and (ii) when the arbitration agreement is unconscionable under state contract law principles. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 666 n.19 (1985); *Armendariz v. Found. Health Psychcare Services, Inc*., 24 Cal. 4th 83, 113 (2000).

An arbitration agreement that is a "prospective waiver of a party's right to pursue statutory remedies" is unenforceable because it is against public policy. *Mitsubishi*, 473 U.S. at 666 n.19. Put another way, an arbitration agreement must not prevent a party from effectively vindicating its statutory rights and remedies. *Am. Express Co. v. Italian Colors Rest*., 570 U.S. 228, 235 (2013). Provisions that limit but do not foreclose a plaintiff's right to pursue statutory remedies do not constitute a substantive waiver of their statutory rights. *Id*. at 236 (class-action waiver did not eliminate plaintiffs' right to pursue statutory remedy in arbitration).

**B.      Enforceability of Arbitration Agreements**

As noted, in my March 2019 Order in the related case *Brice, et al. v. Rees, et al.*, Case No. 18-cv-01200-WHO, I considered the language of the loan agreements, including the provisions

5

identifying governing law and the text of the Arbitration Agreements, of the exact loan agreements at issue here. I reviewed the arguments raised, studied two opinions from the Fourth Circuit and numerous district court opinions (all of which addressed similar if not identical tribal loan agreements and found them unenforceable), and concluded that "the choice-of-law provisions regarding the lenders and the loan agreements, in conjunction with arbitration agreement provisions restricting the law the arbitrator may apply, create an unambiguous waiver of rights and the agreements and are therefore unenforceable." March 2019 Order at 17. I explained that I did not need to reach "whether there is a clear and unmistakable delegation clause because that would not change the fact that the arbitration agreement is unenforceable as an unambiguous prospective waiver." *Id*. at 17-18.

To the extent defendants want me to revisit arguments raised and considered in my March 2019 Order, they point to no difference between the allegations in this case and those in the related *Brice v. Rees* case that would alter my analysis. Nor do defendants cite any opinions that have come out since my prior Order that might impact the arguments raised and addressed therein.[1] As such, I will not revisit arguments raised in the *Rees* case and rejected in my March 2019 Order. *See* Motion to Stay at 17-23; Motion to Compel [Dkt. No. 25] at 12-21; Reply on Motion to Stay [Dkt. No. 47] at 9-15; Reply on Motion to Compel [Dkt. No. 48] at 7-14.

However, defendants also argue that the result here should be different because of arguments that were either not raised or not addressed in my prior ruling. The main thrust of both the motions to stay and compel is that because of the clear delegation provision in the loan agreements, giving the arbitrator the right to determine the scope and enforceability of the Arbitration Agreement, and Supreme Court precedent, I should reverse course and stay this case while an arbitrator decides the enforceability of the Arbitration Agreements. *See* Motion to Stay [Dkt. No. 24] (relying on *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) and *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019)).

---

[1] The Shareholder Defendants do cite to a few opinions issued *before* my March 2019 Order which, interpreting different loan agreements and Arbitration Agreements than the ones at issue here, enforced arbitrability clauses in tribal loan agreements. Reply on Motion to Compel at 7 n. 4. Those cases are not apposite or otherwise persuasive.

6

The Second Circuit evaluated this very issue in a case concerning the same tribal lending scheme run through Think Finance. In *Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019), it considered some of the same loan agreements as the ones at issue in this case and, despite the presence of a delegation provision, concluded that the arbitration agreements were unenforceable.[2] It rejected the argument made by defendants here that under the *Schein* decision and in light of the delegation provision, the arbitrator must decide the enforceability of the Arbitration Agreements. It explained, "Defendants would have us believe that the Supreme Court's recent decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ⸺ U.S. ⸺, 139 S. Ct. 524 (2019), requires a different outcome. But *Schein* dealt with an exception to the threshold arbitrability question—the so-called "wholly groundless" exception—not a challenge to the validity of an arbitration clause itself. *See id.* at 529–31. As such, *Schein* has no bearing on this case." *Id.*, 922 F.3d at 126 n.3.

The Sequoia Defendants address the Second Circuit's rejection of their argument in *Gingras* in a footnote. They contend that *Gingras* was incorrectly decided because the *Gingras* court never ruled on the enforceability of the delegation provision, required by the Supreme Court's *Schein* decision, before proceeding to rule on the enforceability of the arbitration agreements. Motion to Stay at 15 n.6. The Sequoia Defendants also seek to distinguish *Gingras* on the grounds that plaintiffs here do not allege in their Complaint that the "Delegation Provision is unenforceable," whereas that was expressly alleged in the *Gingras* case. *Id.*[3]

In my March 2019 Order in the related case, I concluded that if there was no effective agreement to arbitrate there could be no effective delegation provision. March 2019 Order at 11. While I did not specifically address *Schein*, I agree with and follow the analysis of the Second Circuit in *Gingras*. *Schein* does not require a different approach or outcome. This conclusion is consistent with the most recent decision rejecting defendants' argument, *Gibbs v. Stinson*,

---

[2] The Second Circuit followed the analysis of the Fourth Circuit in *Hayes v. Delbert Servs. Corp*, 811 F.3d 666 (4th Cir. 2016) and *Dillon v. BMO Harris, N.A.*, 856 F.3d 330, 333 (4th Cir. 2017).

[3] As explained in the March 2019 Order, defendants' "contention in their MTC that because plaintiffs had not directly or specifically challenged the delegation provision in the Complaint, the motion must be granted and the matter submitted to the arbitrator, is incorrect." March 2019 Order at 11 n.8. Here, through their oppositions to the motions to stay and compel, plaintiffs make clear their direct challenge the enforceability of the delegation provision.

3:18CV676, 2019 WL 4752792, at *2 (E.D. Va. Sept. 30, 2019). There, the district court held that "*Schein* Does Not Prevent the Court From Determining the Validity of the Delegation Provisions in the Arbitration Agreements." (capitalization in original). Consistent with my March 2019 Order, the *Gibbs* court reasoned that "[b]ecause invalid choice-of-law provisions in an arbitration agreement infect the validity of the delegation clause," it should review "the choice-of-law provisions in the Plain Green [and] Great Plains . . . Arbitration Agreements." *Id.* *12. It ultimately concluded, as I did, that those Agreements' choice-of-law provisions were unenforceable prospective waivers. *Id.* at *18.[4]

The Sequoia Defendants also argue that if I stick to my prior conclusions that the choice-of-law provisions are impermissible prospective waivers, they should be severed from the Arbitration Agreements and that I should enforce the remainder. However, as the Fourth Circuit explained in *Hayes*, the choice-of-law provisions cannot be severed from the rest of the arbitration agreement because they go "to the core of the arbitration agreement." 811 F.3d at 675–76; *see also Gingras v. Think Fin., Inc.*, 922 F.3d 112, 128 (2d Cir. 2019) ("We find no basis therefore to sever any particular provision of the arbitration agreement because, given the pervasive, unconscionable effects of the arbitration agreement interwoven within it, nothing meaningful would be left to enforce."); *Gibbs v. Stinson*, 3:18CV676, 2019 WL 4752792, at *18 (E.D. Va. Sept. 30, 2019) ("the Court finds the Arbitration Agreements unenforceable and nonseverable."). I agree with these courts that have found materially similar choice-of-law provisions not amenable to severance and that the Agreements unenforceable. The choice-of-law provisions that permeate the Agreements and make them unenforceable prospective waivers cannot be severed from the Agreements to leave anything meaningful to enforce.

In short, none of the arguments raised by the Sequoia Defendants or the Shareholder Defendants on these motions undermines or alters the conclusion I reached in the related *Rees*

---

[4] The *Gibbs* court granted the motion to compel with respect to "Mobiloans" arbitration agreements. *Id.* *19-26. While the Complaint in this case references Mobiloans contracts as part of the tribal-lending scheme, Complaint ¶ 3, none of the plaintiffs in this case apparently took out a Mobiloan. The Mobiloan contracts are not discussed in either the defendants' motions to stay or compel or plaintiffs' oppositions thereto.

8

1  case. The motions to stay and compel are DENIED.

## II.     MOTION TO TRANSFER

Both sets of defendants, in the alternative to their motions to stay and compel arbitration, seek transfer of this case to the Northern District of Texas where bankruptcy proceedings are pending with respect to Think Finance, LLC. The same plaintiffs that have brought this case have asserted claims for relief against Think Finance in the bankruptcy proceedings. Defendants argue that the claims asserted here against the related-to Think Finance defendants are by extension "related to" the Think Finance bankruptcy proceedings. Plaintiffs oppose that motion, pointing out that a settlement in the bankruptcy proceedings has been reached and was preliminarily approved by the court. Because resolution of those proceedings is imminent, the Bankruptcy Court will soon lack subject matter jurisdiction over any "related to" issues in this case when the debtors' estate is dissolved. More generally, plaintiffs dispute that transfer is supported by the interests of justice or convenience of the parties factors. For the reasons discussed below, the motion is DENIED.

### A.      Legal Standard

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). District courts have the broad discretion to adjudicate motions to transfer on a case-by-case basis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Prior to granting a transfer of venue pursuant to 28 U.S.C. § 1404(a), a district court must find "that the transferee court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotation marks omitted).

A court may transfer a proceeding "related to" a bankruptcy proceeding in another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. "The factors the Court should consider in determining whether a transfer is warranted under the 'interests of justice' prong include: (1) the economics of estate administration; (2) the presumption in favor of

the 'home court;' (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders by those familiar with its laws; (6) the enforceability of the judgment; and (7) the plaintiff's original choice of forum, although this last factor is tempered by the presumption in favor of the home court. . . . Of these factors, the most important is the economic and efficient administration of the estate." *Jackson v. Fenway Partners, LLC*, C 13-00005 JSW, 2013 WL 1411223, at *3 (N.D. Cal. Apr. 8, 2013) (internal citations omitted). The "factors relating to the convenience of the parties, [] include: (1) location of the plaintiff and defendant; (2) ease of access to necessary proof; (3) the availability of subpoena power for unwilling witnesses; and (4) expenses related to obtaining witnesses." *Id*. at *4.

In addition, for § 1412 to apply, the case to be transferred must be sufficiently "related to" a bankruptcy proceeding. *See Jackson v. Fenway Partners, LLC*, No. C 13-00005 JSW, 2013 WL 1411223, at *3 (N.D. Cal. Apr. 8, 2013). To determine whether "related to" jurisdiction exists, courts examine whether "the outcome of the [civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Feitz*, 852 F.2d 455, 457 (9th Cir. 1988) (relying on *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

**B.     Transfer**

The central argument defendants make in support of their motion to transfer is that the claims here are "related to" the bankruptcy proceedings in Texas and therefore could be asserted in those proceedings. For example, if plaintiffs are successful in this case, defendants contend that plaintiffs' claims asserted directly against Think Finance in the bankruptcy proceedings could be reduced if not "altogether satisfied." Relatedly, if plaintiffs lose their claims here, defendants argue that their claims asserted directly against Think Finance in the bankruptcy proceedings could be extinguished or otherwise barred. As such, defendants assert that the claims here satisfy the broad "related to" standard under § 1412. Defendants also point out that some of the materially similar claims asserted in the related *Brice v. Rees* case, Case No. 18-cv-01200, were transferred to the Northern District of Texas back in June 2018. Case No. 18-cv-01200, Dkt. No. 66.

As plaintiffs note, they did not oppose the transfer of claims in the *Rees* case in mid-2018

when the bankruptcy proceedings were being actively litigated. *Id*. Now the bankruptcy proceedings against Think Finance have been largely resolved, as the parties have entered into a "global settlement" that has been preliminarily approved. Opposition to Motion to Transfer [Dkt. No. 43] at 1.

Assuming that the claims in this case, which are not asserted against Think Finance but only against entities and persons that owned or invested in Think Finance, are sufficiently "related to" the Think Finance bankruptcy proceedings, I conclude that transfer is not warranted. Given the near-resolution of the proceedings in Texas, transfer would not further the economic or efficient administration of the estate, which is the most significant interest of justice factor. Nor would transfer promote judicial efficiency, considering my familiarity with the claims asserted in this case and the related case against different defendants based on the same tribal-lending scheme. Finally, the state of California's interest in having usury claims raised under its law resolved in California and plaintiffs' original choice of forum in California both weigh heavily against transfer.[5]

As to convenience of the parties, that significant discovery has already taken place in connection with the Think Finance proceedings in Texas, which will be of use to *both* the defendants and plaintiffs in this case. That reduces but does not eliminate the burden on defendants to litigate these claims here instead of Texas. On the other hand, while plaintiffs' direct claims against Think Finance are being resolved in the Northern District of Texas without apparent insurmountable inconvenience, litigating these claims against these defendants in this forum is significantly more convenient to these California-based plaintiffs.[6] On balance, transfer is not independently warranted for the convenience of the parties.

Defendants' motion to transfer is DENIED.

---

[5] The *Gibbs* court in the Eastern District of Virginia recently relied on similar considerations in denying an identical motion to transfer the consumer protection claims asserted in that case to the Northern District of Texas, despite having granted a contested motion to transfer back in 2018. *See Gibbs v. Stinson*, 3:18CV676, 2019 WL 4752792, at *6-8 (E.D. Va. Sept. 30, 2019).

[6] *See* Plaintiff Declarations at Dkt. Nos. 43-1, 43-2, 43-3.

11

**CONCLUSION**

Defendants' motions to stay, to compel arbitration, and transfer are DENIED.

**IT IS SO ORDERED.**

Dated: November 1, 2019



William H. Orrick
United States District Judge