1  ARMSTRONG TEASDALE LLP
   Richard L. Scheff (admitted pro hac vice) rlscheff@atllp.com
2  Jonathan P. Boughrum (admitted pro hac vice) jboughrum@atllp.com
   David F. Herman (admitted pro hac vice) dherman@atllp.com
3  Michael C. Witsch (admitted pro hac vice) mwitsch@atllp.com
4  2005 Market Street
   One Commerce Square, Floor 29
5  Philadelphia, PA 19103
   Telephone: (267) 780-2000
6

7  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   Anna S. McLean (Cal. Bar No. 142233) amclean@sheppardmullin.com
8  Michael A. Lundholm (Cal. Bar No. 336151) mlundholm@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
9  San Francisco, CA 94111-4109
   Telephone:    (415) 434-9100
10 Facsimile:    (415) 434-3947

11 *Counsel to Defendants Michael Stinson, Linda Stinson,*
   *7HBF No. 2, Ltd., Stephen J. Shaper, L. Stephen Haynes, and*
12 *Haynes Investments, LLC*

13                     **UNITED STATES DISTRICT COURT**
14       **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

15 KIMETRA BRICE, EARL BROWNE, and     CASE NO. 3:19-cv-1481-WHO
   JILL NOVOROT,
16                   Plaintiffs,        **NOTICE OF MOTIONS AND
                                        DEFENDANTS MICHAEL STINSON,
17 v.                                   LINDA STINSON, 7HBF NO. 2, LTD.,
                                        STEPHEN J. SHAPER, L. STEPHEN
18                                      HAYNES, AND HAYNES INVESTMENTS,
   MIKE STINSON, LINDA STINSON,        LLC'S MOTIONS IN LIMINE, AND
19 7HBF NO. 2, LTD., STARTUP CAPITAL   MEMORANDUM OF POINTS AND
   VENTURES, L.P., AND STEPHEN J.      AUTHORITIES IN SUPPORT OF THE
20 SHAPER,                             MOTION**
                   Defendants.
21

22 KIMETRA BRICE, EARL BROWNE, and
   JILL NOVOROT,
23                   Plaintiffs,        CASE NO. 3:18-cv-01200-WHO

24 v.                                   Date:   August 9, 2021
                                        Time:  2:00 PM
25                                      Judge: Hon. William H. Orrick
   HAYNES INVESTMENTS, LLC, AND L.
26 STEPHEN HAYNES,

27                   Defendants.

28

**PLEASE TAKE NOTICE** that on August 9, 2021 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick, United States District Judge, in Courtroom 2 – 17th Floor of the United States District Court for the Northern District of California, San Francisco, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Michael Stinson, Linda Stinson, 7HBF No. 2, Ltd., and Stephen J. Shaper (the "Shareholder Defendants"), and L. Stephen Haynes, and Haynes Investments, LLC (the "Haynes Defendants" and collectively with the Shareholder Defendants, "Defendants") will and hereby do move this Court for an Order, *in limine*, directing the following:

1. Counsel shall not solicit evidence or make argument regarding other settlements (amounts or fact of settlement) except to prove offset of damages.

2. Counsel shall not solicit evidence from Plaintiffs, or use interrogatory responses, with respect to any fact outside Plaintiffs' personal knowledge, and specifically testimony of counsel (*e.g.*, discovery responses and declarations).

3. The records of Think Finance, or any other non-party, in the possession of Plaintiffs or Defendants, although produced in discovery, and even where stipulated as authentic, shall not be presumed admissible for the truth of the matter asserted.

4. RSM is not competent under Fed. R. Evid. 602 to testify about the Think Finance consumer-level loan data. If RSM testifies at all, it should not be permitted to testify about the rate of interest actually charged to a consumer, or the amount of damages actually incurred by any California consumer, given the lack of data to support such testimony.

5. No summaries under Fed. R. Evid. 1006 of the RSM data shall be offered. If permitted, they may not conflict with the data or deposition of RSM's corporate representative.

6. Counsel shall not solicit evidence or make argument about other cases involving Native American tribes, other than the Otoe-Missouria and Chippewa Cree.

7. Counsel shall not solicit evidence or make argument regarding pejorative phrases such as "rent-a-tribe" or "rent-a-bank," as outlined further below.

8.  Counsel shall not solicit evidence or make argument concerning Operation Choke Point or the implication that there has been any judicial finding that the conduct at issue has been held illegal or improper.

9.  Counsel shall not solicit evidence or make argument that the courts in *Otoe-Missouria Tribe of Indians v. New York State Dept. of Fin. Servs.*, 974 F. Supp. 2d 353 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014), "decided" anything more than the denial of a sought preliminary injunction.

10. Counsel shall not solicit evidence or make argument regarding the so-called Elevate Credit, Inc. "spin-off."

These Motions are based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all papers and records on file, and such other matters as may be presented to the Court at or before the hearing on this Motion.

Dated: July 26, 2021.

By:   */s/ Anna S. McLean*

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:   (415) 434-9100
Facsimile:   (415) 434-3947

Richard L. Scheff (admitted pro hac vice)
Jonathan P. Boughrum (admitted pro hac vice)
David F. Herman (admitted pro hac vice)
Michael C. Witsch (admitted pro hac vice)
ARMSTRONG TEASDALE LLP
2005 Market Street
One Commerce Square, Floor 29
Philadelphia, PA 19103
Telephone: (267) 780-2000

*Counsel to Defendants Michael Stinson, Linda Stinson, 7HBF No. 2, Ltd., Stephen J. Shaper, L. Stephen Haynes, and Haynes Investments, LLC*

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................- 1 -

    A.  Motion *in limine* 1: Counsel shall not solicit evidence or make argument regarding other settlements (amounts or fact of settlement) except to prove offset of damages. .....- 1 -

        1.  Background. ...................................................................................................- 1 -

        2.  Irrelevant. .....................................................................................................- 1 -

        3.  Prejudicial, Misleading, Confusing, Waste of Time. ..................................- 2 -

    B.  Motion *in limine* 2: Counsel shall not solicit evidence from Plaintiffs, or use interrogatory responses, with respect to any fact outside Plaintiffs' personal knowledge, and specifically testimony of counsel (*e.g.*, discovery responses and declarations). .............................................................................................................- 3 -

        1.  Background. ...................................................................................................- 3 -

        2.  No Personal Knowledge, Hearsay. ...............................................................- 4 -

    C.  Motion *in limine* 3: The records of Think Finance, or any other non-party, in the possession of Plaintiffs or Defendants, although produced in discovery, and even where stipulated as authentic, shall not be presumed admissible for the truth of the matter asserted. ..........................................................................................................- 6 -

        1.  Background. ...................................................................................................- 6 -

        2.  Hearsay. ........................................................................................................- 7 -

    D.  Motion *in limine* 4: RSM is not competent under Fed. R. Evid. 602 to testify about the Think Finance consumer-level loan data. If RSM testifies at all, it should not be permitted to testify about the rate of interest actually charged to a consumer, or the amount of damages actually incurred by any California consumer, given the lack of data to support such testimony. ...................................................................................- 8 -

        1.  Background. ...................................................................................................- 8 -

        2.  No personal knowledge, hearsay. ...............................................................- 10 -

    E.  Motion *in limine* 5: No summaries under Fed. R. Evid. 1006 of the RSM data shall be offered. If permitted, they may not conflict with the data or deposition of RSM's corporate representative. .................................................................................- 13 -

        1.  Background. .................................................................................................- 13 -

        2.  Hearsay. ......................................................................................................- 14 -

        3.  Requirements of Rule 1006, Relevance, Prejudice, Misleading, Confusing. ...........- 14 -

F.   Motion *in limine* 6: Counsel shall not solicit evidence or make argument about other cases involving Native American tribes, other than the Otoe-Missouria and Chippewa Cree. ........................................................................................- 16 -

   1.   Background. ....................................................................................- 16 -

   2.   Irrelevant. .......................................................................................- 16 -

   3.   Prejudicial, Misleading, Confusing, Waste of Time. ...................- 17 -

G.   Motion *in limine* 7: Counsel shall not solicit evidence or make argument regarding pejorative phrases such as "rent-a-tribe" or "rent-a-bank," as outlined further below. ..........................................................................................- 18 -

   1.   Background. ....................................................................................- 18 -

   2.   Irrelevant. .......................................................................................- 18 -

   3.   Prejudicial, Confusing, Misleading. ............................................- 19 -

H.   Motion *in limine* 8: Counsel shall not solicit evidence or make argument concerning Operation Choke Point or the implication that there has been any judicial finding that the conduct at issue has been held illegal or improper. ..................- 20 -

   1.   Background. ....................................................................................- 20 -

   2.   Relevance. .......................................................................................- 21 -

   3.   Prejudicial, Confusing, Misleading, Waste of Time. ...................- 22 -

I.   Motion *in limine* 9: Counsel shall not solicit evidence or make argument that the courts in *Otoe-Missouria Tribe of Indians v. New York State Dept. of Fin. Servs.*, 974 F. Supp. 2d 353 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014), "found" or "decided" anything more than denying a preliminary injunction. ..............................- 22 -

   1.   Background. ....................................................................................- 22 -

   2.   Irrelevant. .......................................................................................- 23 -

   3.   Prejudicial, Misleading, Confusing. ............................................- 23 -

   1.   J.... Motion *in limine* 10: Counsel shall not solicit evidence or make argument regarding the so-called Elevate Credit, Inc. "spin-off." ........................................- 24 -

   1.   Relevance. .......................................................................................- 24 -

   2.   Prejudicial, Confusing, Misleading, Waste of Time. ...................- 24 -

CONCLUSION ...................................................................................................- 25 -

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Avalanche Equip., LLC v. Williams-Southern Co., LLC*, No. 13-cv-2827-BNB-
MJW, 2014 WL 12676225 (D. Colo. Oct. 28, 2014)................................................ 12

5

6

*Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924 (N.D. Cal. 2016)........................... 10

7

*Creative Ventures, LLC v. Jim Ward & Assocs.*, 195 Cal. App. 4th 1430, 126 Cal.
Rptr. 3d 564 (2011) .......................................................................................... 17

8

9

*De La Torre v. Merck Enters., Inc.*, 540 F. Supp. 2d 1066 (D. Ariz. 2008) .................................. 5

10

*Eller v. Trans Union, LLC*, 439 F.3d 467 (10th Cir. 2013)............................................................ 12

11

*GCIU-Employer Ret. Fund v. Quad Graphics, Inc.*, Case No. 2:16-cv-00100-
ODW(AFMx), 2019 WL 7945594 (C.D. Cal. Oct. 29, 2019) ...................................... 15

12

13

*In re Homestore.com, Inc.*, No. CV 01-11115, 2011 WL 291176, at *1 (C.D. Cal.
Jan. 25, 2011) ................................................................................................... 1

14

*Hudspeth v. Comm'r*, 914 F.2d 1207 (9th Cir. 1990) ...................................................................... 2

15

*Johnson v. Capital One Servs., LLC*, No. 18-cv-62058-BLOOM/Valle, 2019 WL
5190788 (S.D. Fla. Oct. 15, 2019) .................................................................... 2

16

17

*Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098 (D. Ariz. 2019) .......................... 5, 13

18

*Kemp v. Balboa*, 23 F.3d 211 (8th Cir. 1994) ............................................................................. 12

19

*Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924 (9th Cir. 2002), *as
amended by* 313 F.3d 1093 (9th Cir. 2002)........................................................... 7

20

*Oracle USA, Inc. v. Rimini Street, Inc.*, No. 2:10-CV-00106-LRH-PAL, 2015 WL
5089779 (D. Nev. Aug. 27, 2015)....................................................................... 20

21

22

*Otoe-Missouria Tribe of Indians v. New York State Dept. of Fin. Servs.*, 974 F.
Supp. 2d 353 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014)..................... 21, 22, 23, 24

23

24

*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984) ............................................ 14

25

*Pajas v. Cty. of Monterey*, No. 16-CV-00945-BLF, 2019 WL 188660 (N.D. Cal.
Jan. 14, 2019) ................................................................................................... 19

26

*Parmentor v. Nationstar Mortgage LLC*, No. 6:17-cv-01742, 2018 WL 11223628
(D. Or. Jun. 22, 2018)....................................................................................... 23

27

28

iii

*Sims v. Lakeside Sch.*, No. C06-1412RSM, 2008 WL 189674 (W.D. Wash. Jan. 17, 2008)................................................................................................................15

*State Off. Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843 (10th Cir. 1985)...............................15

*Sweet People Apparel, Inc. v. Saza Jeans, Inc.*, No. CV 14-1143 DMG, 2015 WL 12669884 (C.D. Cal. Jun. 25, 2015)........................................................5, 6, 11, 12

*Unihan Corp. v. Max Grp. Corp.*, CV 09-07921 MMM, 2011 WL 13213808 (C.D. Cal. May 24, 2011)........................................................................................15

*United States v. Biasucci*, 786 F.2d 504 (2d Cir. 1986) ................................................17

*United States v. Cervantes*, No. CR 12-792 YGR, 2016 WL 491599 (N.D. Cal. Feb. 9, 2016)................................................................................................19

*United States v. Davis*, 596 F.3d 852 (D.C. Cir. 2010) ................................................11

*United States v. Dish Network LLC*, 75 F. Supp. 3d 916 (C.D. Ill. 2014) ...................................15

*United States v. Hallinan*, No. 16 CR00130, 2016 WL 10703750 (E.D. Pa. Mar. 31, 2016)................................................................................................17

*United States v. Leon-Reyes*, 177 F.3d 816 (9th Cir. 1999) ........................................15

*United States v. Lloyd*, 807 F.3d 1128 (9th Cir. 2015) ......................................5, 6, 13

*United States v. Lopez*, 762 F.3d 852 (9th Cir. 2014)....................................4, 5, 10, 13

*United States v. Lynch*, 735 Fed App'x 780 (3d Cir. 2018) ........................................15

*United States v. Menendez*, No. CV 11-06313 MMM, 2013 WL 828926 (C.D. Cal. Mar. 6, 2013)........................................................................................15

*United States v. Miller*, 771 F.2d 1219 (9th Cir. 1985)..................................................6

*United States v. Pepe*, 747 F.2d 632 (11th Cir. 1984)................................................17

*United States v. Rizk*, 660 F.3d 1125 (9th Cir. 2011)................................................14

*United States v. Sine*, 493 F.3d 1021 (9th Cir. 2007)............................................8, 17

*United States v. White*, 737 F.3d 1121 (7th Cir. 2013) ................................................15

**Statutes and Rules**

Cal. Rules of Prof'l Conduct R. 3.7 ........................................................................5

Fed. R. Civ. P. 43(a)................................................................................................12

1   Fed. R. Civ. P. 45 ......................................................................................................... 12

2   Fed. R. Evid. 401 ..................................................................................................... *passim*

3   Fed. R. Evid. 403 ..................................................................................................... *passim*

4   Fed. R. Evid. 602 ..................................................................................................... *passim*

5   Fed. R. Evid. 701 ................................................................................................... 4, 5, 13

6   Fed. R. Evid. 801 ....................................................................................................... 7, 11

7   Fed. R. Evid. 805 ..................................................................................................... 11, 13

8   Fed. R. Evid. 901 ............................................................................................................. 6

9   Fed. R. Evid. 1006 .............................................................................................. 13, 14, 15

10  RICO ............................................................................................................................. 17

11  **Other Authorities**

12  Banking J. (Aug. 17, 2017), available at
        https://bankingjournal.aba.com/2017/08/justice-department-formally-ends-
        operation-choke-point/ ........................................................................................ 20

15  Inspector Gen., *The FDIC's Role in Operation Choke Point and Supervisory*
        *Approach to Institutions That Conducted Businesses with Merchants Associated*
        *with High-Risk Activities* (Sept. 2015), available at
        https://www.oversight.gov/sites/default/files/oig-reports/15-008AUD.pdf ........................... 21

18  *Justice Department Formally Ends 'Operation Choke Point,'* A.B.A. ........................................ 20

19  Press Release, DOJ, Scott Tucker Sentenced to More Than 16 Years in Prison for
        Running $3.5 Billion Unlawful Internet Payday Lending Enterprise (Jan. 5,
        2018), available at https://www.justice.gov/usao-sdny/pr/scott-tucker-
        sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday ................... 16

22  Robert A. Barker & Vincent C. Alexander, *New York Practice Series – Evidence in*
        *New York State and Federal Courts* § 6:19 .......................................................................... 11

Defendants Michael Stinson ("Mr. Stinson"), Linda Stinson ("Ms. Stinson"), Stephen J. Shaper ("Shaper"), 7HBF No. 2, Ltd. ("7HBF"), Haynes Investments, LLC, and L. Steven Haynes (together, "Haynes," and with the others, "Defendants"), submit this brief in support of their Motions *In Limine*.

## ARGUMENT

**A.      Motion *in limine* 1: Counsel shall not solicit evidence or make argument regarding other settlements (amounts or fact of settlement) except to prove offset of damages.**

### 1.      Background.

Plaintiffs have consistently invoked information pertaining to settlements in other matters involving Think Finance as purported proof that Defendants are liable for Plaintiffs' alleged injuries. *See, e.g.*, Witsch Decl.,[1] Ex. 1, (Browne Dep.), at 21:24–23:4 (acknowledging that another settlement pertaining to Think Finance and "what I have been told by my counsel" are the basis of his understanding of Defendants' liability).  In particular, Plaintiffs point to a nationwide bankruptcy settlement approved in 2019 by the U.S. District Court for the Eastern District of Virginia in *Gibbs v. Plain Green, LLC.*, No. 3:17-cv-495; the Bankruptcy Court for the North District of Texas in *In re Think Finance, LLC*, No. 17-33964 (the "Think Finance settlement"); and settlements involving other former parties to this action.[2] As this Court knows, however, there have been no prior findings of liability against Think Finance or any of its executives.

### 2.      Irrelevant.

Irrelevant evidence is inadmissible, and evidence is relevant only if it tends to make a fact of consequence to the action more or less probable. Fed. R. Evid. 401. "[A]ny information or evidence pertaining to other litigation and settlements is irrelevant, and the lack of probative value

---

[1] References to "Witsch Decl.," and corresponding exhibits, are references to the Declaration of Michael C. Witsch in Support of these Motions, which has been filed contemporaneously.

[2] *See In re Homestore.com, Inc.*, No. CV 01-11115 RSWL (CWx), 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (granting motion *in limine* to exclude reference to or evidence of amount of settlement with previous defendants).

of any such evidence is substantially outweighed by the danger of unfair prejudice." *Johnson v. Capital One Servs., LLC*, No. 18-cv-62058-BLOOM/Valle, 2019 WL 5190788, at *5 (S.D. Fla. Oct. 15, 2019); *see also Hudspeth v. Comm'r*, 914 F.2d 1207, 1213–14 (9th Cir. 1990) ("[T]he evidence [of compromise] is irrelevant, since the offer may be motivated by desire for peace rather than from any concession of weakness of position." (alterations in original) (quoting Fed. R. Evid. 408 advisory committee's notes)). The amounts and fact of settlements in other matters related to Think Finance are irrelevant to whether Defendants, as directors and/or shareholders and/or "funders" of Think Finance, are liable for Plaintiffs' alleged harm because there have been no findings of liability against Think Finance, or others affiliated it. Only if Defendants are found liable would evidence of the other settlements be relevant, and even then, only to offset damages.

### 3.     Prejudicial, Misleading, Confusing, Waste of Time.

Evidence pertaining to other settlements, even if relevant, would be unduly prejudicial. Fed. R. Evid. 403. A court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." *Id.* "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's notes. Evidence pertaining to the Think Finance settlement will unduly prejudice Defendants in the jury's eyes simply by virtue of their (albeit tenuous) links to Think Finance. Such evidence also would only confuse laypersons as they decide complex legal questions involving vicarious liability—for instance, even Plaintiff Earl Browne, who had studied the Think Finance settlement, appeared to misunderstand the import of that settlement. *See* Witsch Decl., Ex. 1 (Browne Dep.), at 21:24–23:4. Moreover, introducing evidence of other settlements would protract would what is already anticipated to be a long trial. If the Court permits Plaintiffs to present evidence about the facts and amounts of other settlements, it

should be prepared to preside over mini trials about the similarities and differences between the allegations at issue and circumstances surrounding those other settlements.[3]

> **B.**   **Motion *in limine* 2: Counsel shall not solicit evidence from Plaintiffs, or use interrogatory responses, with respect to any fact outside Plaintiffs' personal knowledge, and specifically testimony of counsel (*e.g.*, discovery responses and declarations).**
>
> **1.**   **Background.**

Plaintiffs—Kimetra Brice, Earl Browne, and Jill Novorot—have based their factual allegations almost entirely on information provided to them by counsel. Plaintiff Novorot admitted that she has no personal knowledge of any Defendant's involvement in Think Finance and that, as a result, she would be unable "to provide any testimony [about Defendants] based upon [her] firsthand knowledge." Witsch Decl., Ex. 2 (Novorot Dep.), at 18:23–19:12; 29:9–31:11; 35:12–36:1. Plaintiff Novorot knew Defendants were "investors" in Think Finance only because of information provided by counsel. *Id.* at 18:23–19:12. Plaintiff Earl Browne admitted that the basis of his understanding of Defendants' involvement in Think Finance was entirely "what I have been told by my counsel," allegations set forth in a complaint filed by the Consumer Financial Protection Bureau (CFPB),[4] and his reading of the Think Finance settlement. Witsch Decl., Ex. 1 (Browne Dep.), at 22:10–13; 95:9–19. In fact, during his deposition, Browne admitted: (1) he does not know who Ms. Stinson and Sharper are;[5] (2) he has no firsthand knowledge of Mr. Stinson's involvement in Think Finance; and (3) he has "no clue" what Defendant 7HBF is and knows only that it is an entity related to Think Finance. *Id.* at 60:12–61:3.

_____

[3] If references to any settlement are allowed at all, such references should at a minimum be only to the fact of settlement (not the amount) and a cautionary instruction should be given that no inference be drawn therefrom.

[4] Browne further admitted that he has no personal or independent knowledge as to whether the allegations in the CFPB complaint are true and correct. Witsch Decl., Ex. 1 (Browne Dep.), at 113:15–114:9.

[5] *Id.*, at 61:5–7, 62: 5–7. Browne also admitted that (1) "the only basis of information [he has] for what role Ms. Stinson played in this lawsuit is information [he] learned through [his] attorneys"; and (2) "[a]ll my information [about Shaper] has been given to me by my attorneys." *Id.* at 61:8–12, 92:4–9.

Plaintiffs' interrogatory responses rest almost entirely on information outside of Plaintiffs' personal knowledge. Instead, the factual bases for most of their answers were provided by counsel: "Plaintiffs state that they are not attorneys and cannot provide a legal answer, *so will answer this interrogatory through counsel*, *who state as follows* ...."[6] (emphasis added). For instance, Plaintiff Novorot admitted that she had no "firsthand knowledge that the information in the answers to interrogatories were true and correct." Witsch Decl., Ex. 2 (Novorot Dep.), at 173:2–9. Plaintiff Brice also admitted that, other than the information relating the amount paid on her loan, she has no personal knowledge as to the factual representations contained in any answer" to Defendant Linda Stinson's interrogatories. Witsch Decl., Ex. 8 (Brice Dep.), at 131:4–13.

Additionally, Plaintiffs' counsel, Anna C. Haac, Esquire ("Attorney Haac"), submitted a declaration that contained information pertaining to consumer-level account data from Think Finance, asserting: "The facts set forth in this declaration are based in part upon my personal knowledge and review of the records of my law firm and [I] would competently testify to them if called upon to do so." Witsch Decl., Ex. 9 (Decl. of Anna C. Haac in Supp. of Pls.' Mot. Partial Summ. J.), at 2:7–9. Attorney Haac would need to testify as a layperson, given that Plaintiffs have not proffered her as an expert witness.

### 2.    No Personal Knowledge, Hearsay.

A lay witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Personal knowledge means knowledge produced by the direct involvement of the senses." *United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014). The personal-knowledge requirement extends to Rule 701 of the Federal Rules of Evidence, which limits non-expert opinions to opinions based on "first-hand knowledge or observation." *Id.* at 863–64 (quoting Fed. R. Evid. 701 advisory committee's notes);

---

[6] Witsch Decl., Ex. 3, Pls.' Resps. to Def. 7HBF No. 2, LTD.'s First Set of Interrogs., at Nos. 2–5, 7–20; Ex. 4, Pls.' Resps. to Def. Linda Stinson's First Set of Interrogs., at Nos. 2–19; Ex. 5, Pls.' Resps. to Def. Mike Stinson's First Set of Interrogs., at Nos. 2, 4–21, 23, & 24; Ex. 6, Pls.' Resps. to Def. Stephen J. Shaper's First Set of Interrogs., at Nos. 2–19; Ex. 7, Pls.' Suppl. Resps. to Defs. Linda Stinson's Interrog. No. 14, Mike Stinson's Interrog. No. 17, 7HBF No. 2 LTD.'s Interrog. No. 14, Startup Capital Ventures, L.P.'s Interrog. No. 14, and Stephen J. Sharper's Interrog. No. 14.

*id.* at 864 ("[T]he personal knowledge requirement under Rule 602 is the same as that under Rule 701(a)." (citation omitted)). "[A] witness has personal knowledge only when testifying about events perceived through the physical senses or when testifying about opinions rationally based on personal observations and experience." *De La Torre v. Merck Enters., Inc.*, 540 F. Supp. 2d 1066, 1075 (D. Ariz. 2008). A lay witness thus cannot testify or opine about the subject matter of hearsay statements of which she has "no personal knowledge." Fed. R. Evid. 602 advisory committee's notes; *see also United States v. Lloyd*, 807 F.3d 1128, 1153–57 (9th Cir. 2015) (holding that lay opinion witnesses cannot rely on, nor base their testimony on, hearsay evidence).

Plaintiffs admitted during their depositions that they lacked firsthand knowledge as to most of the facts underlying their claims against Defendants. Instead, their knowledge of the 'facts' is secondhand (and, in many instances, thirdhand), based on information either obtained from their counsel or gleaned from the Think Finance settlement and internet research. In other words, Plaintiffs have admitted that their knowledge of each Defendant derives entirely from hearsay.

For similar reasons, Attorney Haac should be precluded from testifying as a witness.[7] Her knowledge of the facts derives from her review of her law firm's records, and a layperson cannot testify, or even opine about, a matter unless her testimony is based on "first-hand knowledge or observation[s]." Fed. R. Evid. 701 advisory committee's notes. Although a lay witness's "personal knowledge can be based on a review of documents," *Sweet People Apparel, Inc. v. Saza Jeans, Inc.*, No. CV 14-1143 DMG (ASx), 2015 WL 12669884, at *1 (C.D. Cal. Jun. 25, 2015), she cannot testify or opine as to their subject matter or truthfulness unless she has "personal, particularized knowledge" derived from first-hand experience or observations. *See Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1102 (D. Ariz. 2019) (quoting *Lativafter Liquidating Tr. v. Clear Channel Commc'ns, Inc.*, 345 F. App'x 46, 51 (6th Cir. 2009)); *see also, e.g.*, *Sweet People Apparel*, 2015 WL 12669884, at *1 (concluding that that an employee with "personal knowledge of certain

---

[7] Moreover, if Plaintiffs call Attorney Haac to testify as a witness, Attorney Haac and her firm should be disqualified from serving as trial counsel under the advocate-witness rule because if she is permitted to testify, there is a genuine likelihood that their status as Plaintiffs' counsel will affect the outcome of these proceedings. *See* Cal. Rules of Prof'l Conduct R. 3.7.

1   aspects of the [defendant-]companies' finances and basic business model" could testify at trial but

2   only if the defendants "can lay a proper foundation at trial for [her] to testify on personal knowledge"

3   as to "the topics" covered in those documents). Otherwise, her testimony would be "based on

4   speculation" or "rely on hearsay," which is impermissible. *See*, *e.g.*, *Lloyd*, 807 F.3d at 1153–57

5   (finding evidentiary error where the district court permitted lay witness to testify because his opinion

6   testimony "was largely based on statements he heard from unidentified telemarketers and investors,

7   well beyond his own personal experience with investors"). Attorney Haac should therefore be barred

8   from testifying because her knowledge of the facts set forth in her declaration derives from hearsay.

9           **C.**    **Motion *in limine* 3: The records of Think Finance, or any other non-party, in**

10                 **the possession of Plaintiffs or Defendants, although produced in discovery, and**

11                 **even where stipulated as authentic, shall not be presumed admissible for the**

12                 **truth of the matter asserted.**

13               **1.**    **Background.**

14         In an effort to expedite the handling of exhibits at trial, the parties stipulated in March of this

15   year to the authenticity of the documents they produced to each other in discovery. ECF No. 139.

16   Authenticity is, however, merely a "condition precedent to admissibility." *United States v. Miller*,

17   771 F.2d 1219, 1234 (9th Cir. 1985); Fed. R. Evid. 901 advisory committee's notes ("[C]ompliance

18   with requirements of authentication or identification by no means assures admission of an item into

19   evidence, as other bars, hearsay for example, may remain."). In other words, Defendants have agreed

20   that the documents they have produced to Plaintiffs are what they appear to be but have not agreed

21   that they satisfy other requirements for admissibility. While the parties also stipulated that where

22   produced from their files, those documents were their business records, ECF No. 139, there are

23   many instances where there are hearsay-within-hearsay issues that prevent Defendants from being

24   capable of vouching for the contents of those documents, and Plaintiffs have largely failed to obtain

25   the testimony necessary, by way of example from third-party records custodians, to lay the necessary

26   foundation for the admission of those documents within documents for their truth.

27         For example, to the extent that Plaintiffs seek to use Think Finance board decks, board

28   memoranda, or internal email communications, those documents—even if authentic and received

by Defendants from Think Finance by email or otherwise—are not presumptively admissible for the truth of the matters asserted in them. The statements contained in those documents are hearsay, and inadmissible, unless Plaintiffs can show they meet an exception. Defendants raise this issue now to avoid the need for constant interruptions at trial as to how such documents should be handled.

### 2.    Hearsay.

Hearsay is, of course, an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Important to several of the following motions, Plaintiffs could have but did not depose a custodian of records from Think Finance or other third parties that produced documents in this case (*e.g.*, Sequoia Capital and others). The parties have agreed that the documents each side has produced from their own files in discovery are *authentic*, and that the documents Defendants produced to Plaintiffs are business records, but each side has reserved all other objections to those documents. ECF No. 139 at 3 ("Nothing in this stipulation shall be construed as an agreement that any documents or things that are subject to this stipulation are admissible into evidence by any Party, except as expressly addressed herein. The Parties hereby expressly reserve the right to object to the admissibility of any document or thing under any grounds permitted by law not expressly addressed herein.").

Defendants expect Plaintiffs to rely on Think Finance records attached to Defendants' emails or otherwise received by Defendants from Think Finance in their case in chief. While Defendants agree that, for example, a cover email attaching documents is a business record of that Defendant under the stipulation, the substance of any attachment containing statements by Think Finance, or by other un-deposed or non-testifying witnesses, remains presumptive hearsay. *See Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 934 (9th Cir. 2002) (the proponent of hearsay evidence bears "the burden of establishing a foundation from which to conclude that the statement was within a hearsay exclusion"), *as amended by* 313 F.3d 1093 (9th Cir. 2002). To the extent Plaintiffs seek to rely on those statements for their truth—except as permitted by the hearsay exceptions, if they can be established—they are inadmissible. *See United States v. Sine*, 493 F.3d 1021, 1035 (9th Cir. 2007) (hearsay evidence "is not admissible absent an applicable exception"). If admissible at all, these statements can be used only for a non-substantive, non-hearsay purpose.

An advance directive to that effect will lessen the anticipated need to make hearsay objections during trial, if and when Plaintiffs seek to rely on third-party statements in such a manner.

        **D.**      **Motion *in limine* 4: RSM is not competent under Fed. R. Evid. 602 to testify about the Think Finance consumer-level loan data. If RSM testifies at all, it should not be permitted to testify about the rate of interest actually charged to a consumer, or the amount of damages actually incurred by any California consumer, given the lack of data to support such testimony.**

              **1.**     **Background.**

This motion should be case dispositive. Defendants can conceive of no manner by which Plaintiffs could prove their case on damages based on any evidence in the record, except by seeking to rely on the RSM data. As the Court is aware, Defendants have long pointed out that there are serious reliability problems with that data, and the Court has acknowledged that "plaintiffs will be required to show how they have accounted for the issues defendants identify." ECF No. 164 at 8. One manner by which they could have tried to remedy those issues, but did not, would have been to have an expert analyze the data. *Id.* ("Those analyses appear to be well within the ability of plaintiffs and their experts to make based on available or securable data, and defendants will be able to challenge those showings at summary judgment or trial."). Plaintiffs, having not deposed a records custodian from Think Finance, and with discovery closed and that person being outside the subpoena power, do not (as far as Defendants can discern) have a witness who can testify about the data with the personal knowledge required by Rule 602. This is a fundamental failure of proof on Plaintiffs' part, and unless Plaintiffs can point to some other manner by which they can prove and quantify their putative harm, should result in dismissal of the case because (as the Court recently predicted), Plaintiffs will not be able to meet their evidentiary burden. *See* ECF No. 236 at 22 ("[M]ore foundation needs to be laid at trial regarding the RSM data and what it supports concerning the rate and amount of interest actually paid by class members…. I have also noted that the *reliability* and completeness of that data could be tested and challenged by defendants on summary judgment or at trial…. At trial, Plaintiffs will need to authenticate and prove up the contents of the RSM data

1    through RSM, an expert, or another source with sufficient knowledge in order to show how much

2    usurious interest class members actually paid.").

3         Aside from Attorney Haac's declaration, addressed above, the only other witness whom

4    Plaintiffs might call to testify about the data would be Ritesh Patel of RSM (or some other

5    representative of RSM). But like Attorney Haac, Mr. Patel or any other RSM representative are not

6    competent to testify about what the data actually means and cannot therefore testify about Plaintiffs'

7    damages (or even what interest rate was charged on a given consumer's loans—a point Mr. Patel

8    conceded at his deposition).

9         When Defendants realized that Plaintiffs were planning to use the RSM data, and then that

10   one of the three class representatives was a confirmed miss in that data—that is, it appears from the

11   data that he was in Alabama, not California, when he took out his loans—they deposed RSM to

12   better understand the data. During that deposition, RSM confirmed that it: (1) was not provided with

13   data or information with which it could verify the data's accuracy; (2) does not know who entered

14   the data into the database or how, or whether it was altered; (3) does not know how the data was

15   maintained or what record-keeping procedures were used in maintaining it; (4) has done little to

16   verify the data's accuracy and does not know of anyone else has; and (5) has not verified whether

17   the consumers in that data were actually a resident of the origination state listed in the data. Opp'n

18   to Mot. for Class Certification, ECF No. 145 at 15–19; *see also* Witsch Decl., Ex. 10 (Patel Dep.)

19   at 14:18–15:2; 53:20–54:12; 123:15–126:4; 129:6–130:2.

20        And in calculating interest, RSM simply subtracted the total amount borrowed from the total

21   amount paid, assumed that difference to be payments on interest, and calculated the rate of interest

22   over the relevant period, as measured through what RSM believed was the "ending date of the loan."

23   *Id*. at 51:2–52:4; 71:11–74:17. This "ending date" could be "the date that the loan is paid off, the

24   loan was sold or the loan was charged off" [i.e., internally written off as uncollectable]—or, where

25   there was no date for any of these three fields, RSM simply selected the "date of preliminary

26   approval of the Think Finance settlement"—what it thought was an appropriate end date. *Id*. at 51:2–

27   52:4; 58:12–60:6; 71:11–74:17; 133:17–135:24.

28

What this means is that for the tens of thousands of loans that were not paid in full, RSM's calculations simply assume that the loan obligations were extinguished on an arbitrary date, and the loan period did not continue to run. Indeed, RSM selected these dates solely for convenience purposes because "that was the data we had," and RSM "needed an ending time period . . . in order to accurately calculate someone's interest." *Id.* at 59:11–61:25. But nothing in the data or the loan agreements supports RSM's conclusion that the loan period should stop running, or that the loan was no longer still open as a receivable. *Id.* at 135:1–24. Indeed, RSM has no information on anything that happened since the "ending date." *Id.* at 136:15–25. By disregarding this additional passage of time, RSM artificially shortens the lifespan of the loan and thereby inflates the interest rate. Furthermore, the RSM data do not have dates for payments—they show only total amounts paid. *Id.* at 118:13–119:10; 120:25–121:11.

RSM thus does not know what rate of interest was actually charged to a given consumer or the amount of damages actually suffered by that consumer. And it admitted this at Mr. Patel's deposition, explaining that if it had additional information about specific dates of payments and the amounts of payment, its interest rate calculations would change. *Id.* at 63:15–64:16; 120:4–13; 122:3-20.

## 2.   No personal knowledge, hearsay.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Again, a witness has personal knowledge only when testifying about events perceived through the physical senses or when testifying about opinions rationally based on personal observations and experience. *Lopez*, 762 F.3d at 863; *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 940 (N.D. Cal. 2016) ("Personal knowledge means a present recollection of an impression derived from the exercise of the witness's own senses."); *see also* Fed. R. Evid. 602 advisory committee's notes (explaining that Rule 602 embodies the common-law "requir[ement] that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact").

As outlined above, although RSM (through its representative Mr. Patel) reviewed and interpreted the data, it does not have firsthand knowledge about whether the data are accurate and reliable. Indeed, Mr. Patel did not even know who was responsible for compiling the data or how that person did so. Witsch Decl., Ex. 10 (Patel Dep.), at 124:2–125:20. He and RSM are therefore not competent to testify that the data actually reflects what it says, including the interest rates that were charged to a given consumer or the amount of damages any consumer actually suffered. He and RSM cannot, by their admission, testify to the truth of the matter asserted on those issues. *E.g.*, Robert A. Barker & Vincent C. Alexander, *New York Practice Series – Evidence in New York State and Federal Courts* § 6:19 (Fed. R. Evid. 602) ("If a witness asserts a fact at trial as though it were based on her own perception, when in fact the assertion is based on what someone else told her, the personal knowledge requirement obviously is not met." (citing *Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1060–61 (7th Cir. 1987))). Indeed, when such hearsay (i.e., data some unknown third party compiled) is at play, the testifying witness "usually must be shown to have had personal knowledge of the subject matter asserted in the statement if it is offered to prove the truth of the assertion." *Id.* (citing *United States v. Owens-El*, 889 F.2d 913, 915 (9th Cir. 1989)).

While RSM and/or Mr. Patel's "personal knowledge [could] be based on a review of documents," *Sweet People Apparel*, 2015 WL 12669884, at *1, their knowledge is still limited to what they actually, personally know. And because they do not *know*, even based on reviewing the data, what the actual interest rates or damages were, they cannot testify about them. Put a different way, a lay witness cannot testify about the subject matter of hearsay statements of which he or she has no personal knowledge,[8] and even where testimony is based on a review of documents, a lay witness must also have derived personal knowledge separate and apart from the review of the

---

[8] "This rule [Rule 602] does not govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement. Rules 801 and 805 would be applicable. *This rule would, however, prevent him from testifying to the subject matter of the hearsay statement, as he has no personal knowledge of it.*" Fed. R. Evid. 602 advisory committee's notes (emphasis added); *see also United States v. Davis*, 596 F.3d 852, 856 (D.C. Cir. 2010) ("If the testimony on its face purports to be based on direct perception of the facts described but is actually based on an out-of-court statement about those facts, the objection should be lack of personal knowledge." (quoting 27 C. Wright & V. Gold, *Federal Practice and Procedure: Evidence* § 6022, at 214–15 (2d ed. 2007))).

documents. *See Sweet People Apparel*, 2015 WL 12669884, at *1 (concluding that that an employee who acquired "personal knowledge of certain aspects of the [defendant-]companies' finances and basic business model" could testify at trial but only if the defendants "can lay a proper foundation at trial for [her] to testify on personal knowledge" as to "the topics" covered in those documents). Otherwise, the lay witness's testimony would be based solely on hearsay, which is impermissible under Rule 602. *See* Fed. R. Evid. 602 advisory committee's notes; *see, e.g.*, *Kemp v. Balboa*, 23 F.3d 211, 213 (8th Cir. 1994) (finding lay witness incompetent to testify due to lack of personal knowledge where her knowledge of the facts were based "solely upon what she had read in the medical records prepared by others").

It is impossible—based on RSM's deposition testimony—for Plaintiffs to lay the necessary foundation for admissibility.[9] Mr. Patel has no personal knowledge of the underlying data or processes used to create the spreadsheet RSM received from third parties. Nor, based on his deposition testimony, can he claim to have personal knowledge of the database separate and apart from his review of the database. His personal knowledge of the consumer-level account data is thus based entirely on hearsay (and, perhaps even double hearsay).[10] Accordingly, Mr. Patel and/or RSM should not be permitted to testify as a fact witness to the consumer-level account data contained in

---

[9] Plaintiffs have no legal mechanism available to solicit trial testimony from Think Finance—the only entity with personal knowledge of the consumer-level account data. Plaintiffs cannot enforce a subpoena against Think Finance under Fed. R. Civ. P. 45 because it is beyond the geographical limits specified in the rule governing compliance with subpoenas. Fed. R. Civ. P. 45(c)(1). Even if Plaintiffs could, if they tried to obtain remote testimony there would be no "good cause in compelling circumstances" to permit Think Finance's remote attendance. Fed. R. Civ. P. 43(a). "[T]he rule is intended to permit remote testimony when a witness's inability to attend trial is the result of 'unexpected reasons, such as accident or illness,' and not when it is merely 'inconvenient for the witness to attend the trial.'" *Eller v. Trans Union, LLC*, 439 F.3d 467, 477–78 (10th Cir. 2013) (quoting Fed. R. Civ. P. 43(a) advisory committee's note). Since the outset of this case, Plaintiffs have known of Think Finance's distant location as well as the nature and significance of the entity's testimony, and they have no good explanation for why Think Finance was not deposed. *See, e.g.*, *Avalanche Equip., LLC v. Williams-Southern Co., LLC*, No. 13-cv-2827-BNB-MJW, 2014 WL 12676225, at *2 (D. Colo. Oct. 28, 2014) (finding no good cause where nature and importance of witness testimony was foreseeable, their distant location was not a surprise, and there was no reason for the failure to depose them).

[10] The database contains underlying data extracted from other documents and records, and this underlying data therefore would presumably constitute double hearsay under Fed. R. Evid. 805.

1   the RSM database due to lack of personal knowledge.[11]  This is a fundamental problem that has

2   long plagued this case, and the Court should preclude Plaintiffs from using the RSM data or RSM's

3   testimony to prove the interest charged on a given loan or Plaintiffs' damages.[12]

4         **E.    Motion *in limine* 5: No summaries under Fed. R. Evid. 1006 of the RSM data**

5              **shall be offered. If permitted, they may not conflict with the data or deposition**

6              **of RSM's corporate representative.**

7                  **1.    Background.**

8         If testimony from RSM, Mr. Patel, and Attorney Haac are not permitted because of the

9   personal knowledge and hearsay issues identified above, any Rule 1006 summary exhibit purporting

10  to summarize the data would be inadmissible and should be excluded. If for some reason the Court

11  disagrees with Defendants on those points, there remains the separate issue of the reliability of that

12  data. Accordingly, were such an exhibit permitted, the Court should direct that any summary exhibit

13  be properly cabined to what the data actually reflects, as clarified by Mr. Patel at the RSM

14  representative deposition.

---

[11] Indeed, even if he were a competent witness, Mr. Patel confirmed at his deposition that he could not reliably testify about what interest rates were charged anyway, which in addition to evidencing his lack of personal knowledge also demonstrates that he could not give that testimony even if he had the requisite first-hand knowledge underlying the data. *E.g.*, Witsch Decl., Ex. 10 (Patel Dep.) at 69:21–22 ("To calculate the person's interest rate was, we don't calculate that"); 120:4–13 ("Q. If you had the information about the specific dates of payment and the amounts of payment, how, if at all, would that affect your interest calculations? A. They . . . would change. But I don't have that information, so I would have to review that information to . . . make a determination.").

[12] Having failed to disclose an expert on this point or otherwise depose someone at Think Finance who could have given the needed first-hand testimony, Plaintiffs should also not be heard to proffer Attorney Haac or RSM/Mr. Patel to evade the expert witness disclosure requirements by simply calling an expert in the guise of a layperson. *See, e.g.*, *Lloyd*, 807 F.3d 1154–57 (finding evidentiary error where district court permitted a lay witness to testify because his opinion testimony "was largely based on statements he heard from unidentified telemarketers and investors, well beyond his own personal experience with investors"). The Ninth Circuit has held that "the personal knowledge requirement under Rule 602 is the same as that under Rule 701(a)," *Lopez*, 762 F.3d at 864, and thus a Rule 701 witness must still have "personal, particularized knowledge" separate and apart from a review of documents. *Joshua David Mellberg*, 386 F. Supp. 3d at 1102 (quoting *Lativafter Liquidating Tr.*, 345 F. App'x at 51). Otherwise, such testimony would be (as here) based "on speculation and hearsay," which is impermissible. *Lloyd*, 807 F.3d at 1154–57 (finding, among other things, that lay opinion testimony could not be "based primarily on the statements of unidentified" persons).

1

2.      **Hearsay.**

2

The Court should disallow the Haac and RSM/Patel testimony for the reasons detailed above.

3

If it does, any Rule 1006 summary of the contents of the RSM data should be excluded because the

4

summary would be based on inadmissible evidence. *See United States v. Rizk*, 660 F.3d 1125, 1131

5

(9th Cir. 2011) ("It is essential that the underlying records from which the summaries are made be

6

admissible in evidence, . . . ."). "A proponent of summary evidence must establish that the

7

underlying materials upon which the summary is based (1) are admissible in evidence and (2) were

8

made available to the opposing party for inspection." *Id.* at 1130. "**[I]t is clear that a summary of**

9

**both inadmissible and admissible hearsay should not be admitted under Rule 1006.**" *Paddack*

10

*v. Dave Christensen, Inc.*, 745 F.2d 1254, 1260 (9th Cir. 1984) (emphasis added). "**The proponent**

11

**of the summary of both admissible and inadmissible hearsay is entitled to admission of only**

12

**those portions that he can demonstrate are entirely admissible**." *Id.* (emphasis added). If the

13

proponent cannot establish which portions are admissible and which are inadmissible, then the entire

14

summary exhibit should be excluded. *Id.* at 1260–61. Because there is not a witness competent to

15

testify about the RSM data (and that third-party data is rank hearsay) any summary of the data would

16

not meet the requirements of Rule 1006 and should be precluded.

17

3.      **Requirements of Rule 1006, Relevance, Prejudice, Misleading,**

18

**Confusing.**

19

Because Plaintiffs cannot lay the proper foundation, no summary of the RSM data should be

20

admitted into evidence. But if the Court were to disagree with the points made above, it remains the

21

case, in the alternative, that any Rule 1006 summary exhibit must merely and accurately *summarize*

22

the data and not present Plaintiffs' views as to what that summarized data means.

23

Rule 1006 allows the proponent of certain evidence to "use a summary, chart, or calculation

24

to prove *the content* of voluminous writings, recordings, or photographs that cannot be conveniently

25

examined in court." Fed. R. Evid. 1006 (emphasis added). But because "[s]ummaries are normally

26

prepared by an interested party and therefore may not be completely accurate or may be tainted with

27

the preparing party's bias," they "must be scrutinized by the trial court to ensure that they are

28

accurate, complete, not unduly prejudicial, limited to the relevant issues, and confined by

appropriate jury instructions." *United States v. Leon-Reyes*, 177 F.3d 816, 820 (9th Cir. 1999); *see also GCIU-Employer Ret. Fund v. Quad Graphics, Inc.*, Case No. 2:16-cv-00100-ODW(AFMx), 2019 WL 7945594, at *4 (C.D. Cal. Oct. 29, 2019) (similar; quotation omitted); *Unihan Corp. v. Max Grp. Corp.*, CV 09-07921 MMM (RCx), 2011 WL 13213808, at *2 & n.7 (C.D. Cal. May 24, 2011) (similar); *Sims v. Lakeside Sch.*, No. C06-1412RSM, 2008 WL 189674, at *7 (W.D. Wash. Jan. 17, 2008) (similar; collecting cases).  In addition, there must be an appropriate foundation laid to admit the summary. *E.g.*, *United States v. Menendez*, No. CV 11-06313 MMM (JCGx), 2013 WL 828926, at *3 (C.D. Cal. Mar. 6, 2013) (collecting cases); *United States v. Lynch*, 735 Fed App'x 780, 785 (3d Cir. 2018). A summary exhibit "**must not misrepresent their contents or make arguments about the inferences the jury should draw from them**." *United States v. White*, 737 F.3d 1121, 1135 (7th Cir. 2013) (emphasis added) (citing *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006)). When summarizing voluminous datasets, the "**[s]ummary evidence must be a compilation of data without opinion.**" *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 932–33 (C.D. Ill. 2014) (emphasis added) (citation omitted). A spreadsheet containing "**interpretations of past data and projections of future events [is] not a simple compilation of voluminous records.**" *State Off. Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 845–46 (10th Cir. 1985) (emphasis added).

If Plaintiffs seek to present a summary of the data, it should be exactly that: a summary of what is in the data. That summary should be consistent with the interpretations of the data given by RSM's representative witness, Mr. Patel, who explained certain limitations on what RSM knows about that data. And as that deposition testimony made clear, RSM lacks knowledge sufficient to say what that data *means* (for example, it cannot verify any of the factual assumptions baked into the data by whomever at Think Finance prepared it). And to the extent Mr. Patel's testimony clarified RSM's understanding of what was in the data, the summary should be consistent with those clarifications. Anything more would effectively be counsel's commentary, interpretation, and spin on the data, usurp the jury's role as factfinder, and be irrelevant, highly prejudicial, and risk misleading or confusing the jury, and thus subject to exclusion under Fed R. Evid 401 and 403. If summaries are used, there should also be an appropriate instruction given to the jury about them.

1    **F.     Motion *in limine* 6: Counsel shall not solicit evidence or make argument about**

2    **other cases involving Native American tribes, other than the Otoe-Missouria**

3    **and Chippewa Cree.**

4          **1.     Background.**

5          Plaintiffs use a broad brush to paint all Native American online lending operations as one

6    and the same—bad and illegal. Take for example their expert, Christopher Peterson, who Plaintiffs

7    proposed would testify that "the business structure of the Think Finance tribal lending operations

8    was functionally similar to the rent-a-tribe online lending operations leading to the federal criminal

9    prosecutions of Scott Tucker, Timothy Muir, Charles Hallinan, and Wheeler Neff." Witsch Decl.,

10   Ex. 11 (Peterson Rep.) at 19. Leaving aside for the moment the inflammatory phraseology,

11   Plaintiffs' claims about Think Finance need to be decided on their merits, not through inappropriate

12   and inapt comparisons.

13         **2.     Irrelevant.**

14         What is relevant to Plaintiffs' claims are the loans issued by Plain Green (the Chippewa

15   Cree's lending company) and Great Plains (that of the Otoe-Missouria tribe), and whether

16   Defendants, as shareholders in or alleged "funders" of those companies' servicing partner, Think

17   Finance, collected unlawful debts through them or otherwise violated California law. Simply put,

18   the acts of defendants in other cases, situated differently, and involving other tribes and other lending

19   companies, are not relevant to that determination. Fed. R. Evid. 401. Plaintiffs wish to leave the

20   jurors with the impression that others have gone to prison for activities similar to those they allege

21   here, which aside from being untrue,[13] is irrelevant to any element of their claims. To the extent that

22   they claim in response that this goes to state of mind, the requisite state of mind they need to prove

23

---

24   [13] Even if such comparisons were appropriate (they are not), the Tucker/Muir operation was a
     sham in which Tucker (assisted by his counsel, Muir) fully operated the tribal lending business

25   from a corporate headquarters in Kansas, and not from the tribal reservation. *E.g.*, Press Release,
     DOJ, Scott Tucker Sentenced to More Than 16 Years in Prison for Running $3.5 Billion Unlawful

26   Internet Payday Lending Enterprise (Jan. 5, 2018), available at https://www.justice.gov/usao-
     sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-

27   payday. The Hallinan-Neff lending operation was alleged to have been equally sham in nature. *See
     generally, e.g.*, *United States v. Hallinan*, No. 16 CR00130, 2016 WL 10703750 (E.D. Pa. Mar.

28   31, 2016) (Indictment). Think Finance's story is a far cry from the conduct in those cases.

is whether Defendants knew they were *collecting* an unlawful debt—not that the debts *were unlawful*.[14] The only use Plaintiffs could have for these comparisons is to elicit that Defendants knew about them, and thus knew their purportedly similar conduct was wrong. But that is not the requisite *mens rea*, and the evidence is thus irrelevant.[15]

### 3.    Prejudicial, Misleading, Confusing, Waste of Time.

Even if these comparisons and references to other tribal lending companies were relevant, they should still be excluded as unduly prejudicial. Fed. R. Evid. 403. Again, Plaintiffs wish to have the jury draw a straight line from other companies, and what their principals were alleged to have done in other cases, to Defendants here. *E.g.*, Witsch Decl., Ex. 12 (Peterson Dep.), at 221:5–25 ("[Haynes] has a real incentive to [lie] because he's – he's the subject of a civil RICO claim and – and, you know – and a number of people have already gone to prison for similar claims . . . and some people paid a lot of money out of these kinds of cases."); Ex. 13 (Jo. Harvison Dep. vol. 1), at 183:13–21 (inquiring of Johnny Harvison whether he was aware Scott Tucker had gone to prison). The probative value of this evidence is substantially outweighed by the risks of unfair prejudice, confusion of issues, and misleading the jury. Fed. R. Evid. 403. Allowing Plaintiffs to tell the jury that Plain Green's and Great Plains' loans were just like those in the Scott Tucker and Charles Hallinan cases would risk severely prejudicing Defendants in the eyes of the jury. What's more, this again is already anticipated to be a long trial. Allowing Plaintiffs to introduce evidence about the

---

[14] Courts have acknowledged that "RICO does not contain any separate *mens rea* or *scienter* elements beyond those encompassed in its predicate acts." *United States v. Pepe*, 747 F.2d 632, 675–76 (11th Cir. 1984). In the context of the collection of unlawful debts, courts look to the underlying state law to determine the necessary intent requirement, to the extent it exists. *See United States v. Biasucci*, 786 F.2d 504, 512 (2d Cir. 1986) (same, and holding that because New York usury law did not require knowledge of the usurious interest rate, RICO would similarly not require such knowledge on the part of a defendant). Under California law, the willful intent necessary under the usury law "'does not require a conscious attempt, with knowledge of the law, to evade it. *The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete.*'" *Creative Ventures, LLC v. Jim Ward & Assocs.*, 195 Cal. App. 4th 1430, 1449–50, 126 Cal. Rptr. 3d 564, 579 (2011) (emphasis added).

[15] And should Plaintiffs offer for their truth such judicial findings—including the convictions of those individuals or the *Otoe* case discussed below—"judicial findings of fact are hearsay, and inadmissible to prove the truth of the findings unless a specific hearsay exception applies." *Sine*, 493 F.3d at 1036.

facts of other cases and other lending operations would necessitate mini trials about those other companies and waste time, likewise warranting that this evidence be excluded. Fed. R. Evid. 403.

G.   **Motion *in limine* 7: Counsel shall not solicit evidence or make argument regarding pejorative phrases such as "rent-a-tribe" or "rent-a-bank," as outlined further below.**

1.   **Background.**

The Court recognized—and Plaintiffs' counsel acknowledged—at the last hearing that the inflammatory phrasing Plaintiffs have employed in this case should not be presented to the jury. Tr. of Jun. 23, 2021 Proceedings, at 4:16–21 (The Court: "The evidence that I'm going to allow will not be pejorative with respect to what the tribe's involvement was. Their role in the alleged enterprise is going to be described factually, but not pejoratively. And the phrase 'rent a tribe,' I think I'm not going to allow at all because it just is pejorative."); *id.* at 29 (Plaintiffs' counsel: "[W]e understand your position from a motion in limine perspective as to the 'rent a tribe' terminology, . . . .'"). Despite those comments at the hearing, Professor Peterson's report is again a good example of the lens through which Plaintiffs wish the case to be presented to the jury—referring to usury as "a grave sin," comparing Think Finance to the "mafia" and the "*La Cosa Nostra*" lending syndicate, and using phrases like "subterfuge," "extortionate," "criminal racketeering," "kickback," "sham," "loanshark," "rent-a-bank," and "rent-a-tribe." *See generally* Witsch Decl., Ex. 11 (Peterson Report). The Complaint, which uses the phrase "rent-a-tribe" more than 30 times, is another example. *See generally* ECF No. 1. Similar phrasing, like "scheme," "scam," "front," "fraud," "extort," and "cheat," are similarly inappropriate. As the Court has already tentatively concluded, the parties' evidentiary presentations to the jury should be accurate and balanced. There is no room for this kind of inflammatory language, which is both irrelevant and unduly prejudicial.

2.   **Irrelevant.**

Inflammatory rhetoric tends to prove no fact of consequence. Fed. R. Evid. 401. The manner in which Plaintiffs' counsel and their proffered expert (a law professor) have characterized certain allegations, such as calling Think Finance's relationship with the Chippewa Cree and Otoe-Missouria tribes a predatory "rent-a-tribe" scheme, are not relevant to whether the actual facts as

1   they will be presented in evidence result in liability under the elements of their claims. Any

2   characterization of the facts are pure opinions and will not assist the jury in any way in determining

3   whether Plaintiffs have met their burdens of proof on their claims. The jury could reach the

4   conclusion that there was something sour about the Think Finance-tribal relationships,[16] but that is

5   exactly the point: it is the province of the jury to reach that conclusion.

6   ### 3.      Prejudicial, Confusing, Misleading.

7          In addition, this kind of inflammatory rhetoric has no probative value and substantially risks

8   unfair prejudice, and confusing and misleading the jury. Fed. R. Evid. 403. Courts have—as the

9   Court earlier indicated it would—precluded such inflammatory phrases from being used at trial for

10  that reason. *See, e.g.*, *Pajas v. Cty. of Monterey*, No. 16-CV-00945-BLF, 2019 WL 188660, at *1

11  (N.D. Cal. Jan. 14, 2019) (excluding testimony under Rule 403 that would have an "inflammatory

12  effect" on the jury); *see also United States v. Cervantes*, No. CR 12-792 YGR, 2016 WL 491599,

13  at *5 (N.D. Cal. Feb. 9, 2016) (disallowing inflammatory characterizations such as use of the words

14  "violent" or "violent street gang" as unduly prejudicial); *Oracle USA, Inc. v. Rimini Street, Inc.*, No.

15  2:10-CV-00106-LRH-PAL, 2015 WL 5089779, at *1 (D. Nev. Aug. 27, 2015) (precluding party

16  and its witnesses from using "inflammatory or other derogatory rhetoric during trial," such as calling

17  the other side "thieves" who "stole" from or "ripped off" others, finding it would be unfairly

18  prejudicial to the other party). Given the Court's earlier tentative ruling, Defendants will not belabor

19  this point, but allowing Plaintiffs to use such phrasing in their evidentiary presentation would serve

20  only to confuse or mislead the jury to prejudge Defendants' liability through rose-colored glasses.

21  This would be the height of what Rule 403's Advisory Committee says is improper because it

22  _____

23  [16] And Plaintiffs will no doubt seek to present evidence to lead the jury to the conclusion that the
    tribes were "rented," in that they lacked meaningful volition and/or involvement and were otherwise

24  taken advantage of by Think Finance, even if they cannot directly tell the jury their view that this
    was a "rent-a-tribe" scheme. This is why Defendants obtained expert reports from Lance Morgan

25  and Eric Henson—two experts at the forefront of tribal economic development (Mr. Morgan having
    decades of *doing* tribal-side development, and Mr. Henson having studied and taught at Harvard

26  about it)—to explain why that was not the case here. While the Court has ordered that Messrs.
    Morgan and Henson will not be permitted to testify before the jury, such pretrial evidentiary

27  decisions are inherently tentative and may be modified through trial. Defendants ask the Court to
    reconsider that ruling because Morgan's and Henson's testimony is highly relevant and important

28  to this issue. Otherwise, Plaintiffs should simply be precluded from exploring the issue at all.

1    "suggest[s a] decision on an improper basis, commonly, though not necessarily, an emotional one."

2    Fed. R. Evid. 403 advisory committee's note. While Defendants have done their best to list above

3    some of the most inflammatory phrasing Plaintiffs have sought to use, which should be specifically

4    excluded, it is not possible to exhaustively list every manner they might try to mischaracterize or

5    comment upon the factual presentation. Thus, while Defendants ask for a pretrial ruling on the above

6    phrases, and inflammatory rhetoric more generally, they also ask the Court to take a "know-it-when-

7    you-see-it" approach to preclude the use of similar phrases and commentary during trial.

8        **H.      Motion *in limine* 8: Counsel shall not solicit evidence or make argument**

9               **concerning Operation Choke Point or the implication that there has been any**

10              **judicial finding that the conduct at issue has been held illegal or improper.**

11              **1.      Background.**

12       "Operation Choke Point" was a "controversial" initiative by certain federal agencies, which

13   "sought to curtail *legal but politically disfavored* businesses by working through bank regulators to

14   pressure financial institutions to end customer relationships with those businesses." *Justice*

15   *Department Formally Ends 'Operation Choke Point,'* A.B.A. Banking J. (Aug. 17, 2017), available

16   at     https://bankingjournal.aba.com/2017/08/justice-department-formally-ends-operation-choke-

17   point/. Relevant here, certain agencies pressured third-party servicers that partnered with lenders

18   like Plain Green and Great Plains, such as automated clearing houses ("ACH" providers) to stop

19   doing business with those lenders and effectively "choke" off the lending companies. The FDIC has

20   since issued formal statements acknowledging that this was improper. *E.g.*, FDIC Off. of Inspector

21   Gen., *The FDIC's Role in Operation Choke Point and Supervisory Approach to Institutions That*

22   *Conducted Businesses with Merchants Associated with High-Risk Activities*, at iv (Sept. 2015),

23   available  at  https://www.oversight.gov/sites/default/files/oig-reports/15-008AUD.pdf  ("Among

24   other things, the internal policy does not allow for the termination of deposit account relationships

25   based solely on reputation risk to an institution. These actions were intended to make clear the

26   FDIC's policy that financial institutions that properly manage customer relationships and effectively

27   mitigate risks are neither prohibited nor discouraged from providing financial services to customers,

28

SMRH:4815-6336-9715.2

1   regardless of the customers' business category, provided that the institutions operate in compliance

2   with applicable laws.").

3          A theme running through Plaintiffs' case—as confirmed by their questioning of multiple

4   witnesses at their depositions—is that Operation Choke Point and other supposed regulatory risks

5   put fear into those affiliated with Think Finance and caused them to believe that the tribes' lending

6   companies were doing something wrong.[17] In other words, they want to present this kind of evidence

7   as showing Defendants' bad intent. Yet, as outlined above, Operation Choke Point's misdirected

8   efforts were not aimed at *illegal* conduct, but instead at industries deemed unsavory by certain

9   federal agencies. *E.g.*, Witsch Decl., Ex. 14 (Haynes Dep.), at 89:6–20 ("My understanding of

10  Operation Choke Point was that the [federal government] … attempted to identify transactional

11  people, ACH providers, credit card companies, and gave them a targeted list of businesses that the

12  Administration wasn't fond of, which was things like gun sales, installment lending, pornography.

13  I'm not sure what else was on the list."). Even if Operation Choke Point were relevant to Defendants'

14  state of mind (which it is not, and assuming Plaintiffs can even show they were each aware of it), it

15  was merely seeking to stamp out disfavored, not illegal, conduct. Plaintiffs should not be permitted

16  to use Operation Choke Point, or to state that there has been any judicial finding (including in the

17  *Otoe-Missouria* case, discussed in the next motion) of illegal or improper activity at Think Finance.

18              **2.       Relevance.**

19          Operation Choke Point and any case Plaintiffs might point to in order to imply some judicial

20  "finding" of bad activity are not relevant. Fed. R. Evid. 401. Plaintiffs wish to use such evidence—

21  presuming they can establish each Defendant was aware of it—to show that they each understood

22  Think Finance was a "bad" actor and was operating illegally. But there has never been such a judicial

23  finding, in any court, and Operation Choke Point was not the crackdown on "illegal" businesses

24  Plaintiffs wish it were, as outlined above. Even so, any such inference from Operation Choke Point

25  or any court case about which Defendants may have learned during the relevant period remain

26  _____

27  [17] *See, e.g.*, Witsch Decl., Ex. 14 (Haynes Dep.), at 92:13–93:7; Ex. 15 (Lutes Dep.), at 28:21–30:24; Ex. 16 (Stinson Dep.), at 176:5–21; Ex. 17 (Dean Dep.), at 102:13–18; Ex. 18 (Ja. Harvison Dep.),

28  at 39:24–40:20; Ex. 19 (L. Stinson Dep.), at 71:20–25; Ex. 20 (Nguyen Dep.), at 239:13–16.

1   irrelevant for the separate reason that the *mens rea* Plaintiffs need to establish deals with whether

2   Defendants intended to take an action resulting in *collection* of an unlawful debt—not whether they

3   understood the loans to be somehow unlawful. *See supra* note 14. There is therefore no possible

4   relevance to such evidence.[18]

5          **3.      Prejudicial, Confusing, Misleading, Waste of Time.**

6          Because the implication Plaintiffs wish to draw from Operation Choke Point and/or any

7   judicial decision during the relevant period is a false one, the prejudice caused by allowing such

8   evidence substantially outweighs any possible probative value that evidence might have. The jury

9   should not be permitted to hear about erstwhile regulators conducting a misguided regulatory

10  endeavor against ACH providers and whatever effect those efforts might have had on Think Finance

11  or Defendants, particularly where those efforts have been rescinded and were never intended to

12  restrict illegal activity anyway. In a similar way, references to other court cases decided in the

13  relevant period would cause the same prejudice and risk of misleading or confusing the jury as the

14  references to Operation Choke Point. No court, in any jurisdiction, has ever found that the conduct

15  here was illegal or improper. Allowing reference to any such evidence would violate Rule 403 for

16  those reasons and would also waste trial time.

17  **I.     Motion *in limine* 9: Counsel shall not solicit evidence or make argument that**

18         **the courts in *Otoe-Missouria Tribe of Indians v. New York State Dept. of Fin.***

19         ***Servs.*, 974 F. Supp. 2d 353 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014),**

20         **"found" or "decided" anything more than denying a preliminary injunction.**

21         **1.      Background.**

22         One of Plaintiffs' favored tactics in this case has been to point to language from *Otoe-*

23  *Missouria Tribe of Indians v. New York State Dept. of Fin. Servs.*, 974 F. Supp. 2d 353 (S.D.N.Y.

24  2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014), and claim that those cases "found" certain things. As one

25  example, they recently said of those cases that "one federal court *found* that these loans were 'subject

26  to [New York]'s non discriminatory anti-usury laws' because the 'undisputed facts demonstrate[d]'

27  _____

28  [18] *See also supra* note 15 (such judicial findings are also presumptive hearsay).

1   that the illegal activity was taking place in New York, off of the Tribes' lands.'" Opp'n to Mot. for

2   Summ. J., ECF No. 202, at 22 (citing *Otoe* district court opinion) (emphasis added, brackets altered).

3               **2.**          **Irrelevant.**

4        This mischaracterization of the *Otoe* cases as having "found" things based on "undisputed

5   facts" has no tendency to prove any fact of consequence. Fed. R. Evid. 401. All *Otoe* did was grant,

6   and then affirm, the denial of a motion for a preliminary injunction. 769 F.3d at 118. But in doing

7   so, the Second Circuit was clear that "[a] court might ultimately conclude that, despite these

8   circumstances, the transaction being regulated by New York could be regarded as on-reservation,"

9   but found the record on the motion for a preliminary injunction too "ambiguous and insufficient" to

10  reach that conclusion in that posture. *Id*. at 115–16 & n.6. It specifically noted that the state's

11  arguments in defending against the motion "rest[ed] on uncertain factual premises." *Id*. at 115 n.6.

12  It therefore left the issue for a trial that never took place. There were therefore no "findings," or

13  "holdings," or "decisions" on the merits of anything in the *Otoe* case. *E.g.*, *Parmentor v. Nationstar*

14  *Mortgage LLC*, No. 6:17-cv-01742, 2018 WL 11223628, at *1 (D. Or. Jun. 22, 2018) ("The court's

15  decision on a motion for preliminary injunction is not a ruling on the merits.") (citation omitted)).

16  That being the case, any representation that the courts in *Otoe* did anything more than deny a

17  preliminary injunction (i.e., any comments regarding the merits of the claims pleaded there) have

18  no possible relevance.[19]

19              **3.**          **Prejudicial, Misleading, Confusing.**

20       Indeed, such comments or testimony would not only lack probative value but any such value,

21  if it existed, would be substantially outweighed by the dangers of unfair prejudice, confusion of the

22  issues, and misleading the jury, which further militates toward their exclusion. Fed. R. Evid. 403.

23  Those comments or testimony, if made, would unfairly prejudice Defendants because they are,

24  simply put, untrue (for the reasons above). And to the extent they are made, a lay jury is not likely

25  to understand the distinction between a finding on the merits and the denial of a preliminary

26

27  ────────────

28  [19] And again, those judicial decisions are presumed to be hearsay. *See supra* note 15.

injunction, and is thus more likely to adopt Plaintiffs' mischaracterizations of the decisions as having "found" things they did not. They should therefore be excluded.

**J.      Motion *in limine* 10: Counsel shall not solicit evidence or make argument regarding the so-called Elevate Credit, Inc. "spin-off."**

One final, similar argument to the preceding ones: a theme Plaintiffs are presumed to seek to pursue at trial is that Think Finance (and Defendants by proxy) 'knew the walls were closing in' based on things like Operation Choke Point and the *Otoe-Missouria* decision, and so spun off the 'good' part of Think Finance into Elevate Credit, Inc., and left the 'bad' part of Think Finance to die on the vine. The evidence would show that this was not true—what remained of Think Finance was the most profitable parts of the existing business, which only truly came under threat when one of the two tribes terminated its relationship with Think Finance, casting Think Finance into the position of needing to seek bankruptcy protection. It had nothing to do with the regulatory or legal 'threats' Plaintiffs manufacture. But that is beside the point, because evidence regarding the so-called Elevate "spin-off" has no relation to Plaintiffs' claims. Allowing such evidence would also risk unfair prejudice, misleading and confusing the jury, and waste time.

**1.      Relevance.**

The irrelevance of the Elevate spin-off is perhaps best demonstrated by one simple fact: any Plaintiff in the class who claims to have been harmed by Defendants alleges the exact harm those in the class whose harm supposedly post-dated the spin-off date. Simply put, evidence relating to the spin-off is of no consequence to establishing any element of any one of Plaintiffs' claims, damages, the circumstances of them taking their loans, or probative of any other germane fact. Fed. R. Evid. 401. Because the spin-off is not relevant, evidence about it should be excluded.

**2.      Prejudicial, Confusing, Misleading, Waste of Time.**

Even if relevant, evidence of the Elevate spin-off would be unfairly prejudicial, confuse and mislead the jury, and waste time. Fed. R. Evid. 403. It is easy to see how the good-company/bad-company narrative Plaintiffs wish to present would impact (and confuse and mislead) a jury into presuming bad intent (not an intent relevant to their claims, as outlined above), and the prejudice of allowing it substantially outweighs any probative value that evidence would have. Moreover, it

1   would add and waste a substantial amount of time for the parties to present evidence about Elevate

2   and the spin-off—evidence which again has nothing to do with the claims or defenses the jury is

3   going to need to consider and decide.

4                                    **CONCLUSION**

5          For the foregoing reasons, the Moving Defendants respectfully request that the Court grant

6   their motions *in limine*.

7

8   DATED: July 26, 2021.

9                              By:    */s/ Anna McLean*_____

10                                    Anna S. McLean (Cal. Bar No. 142233)
                                      Michael A. Lundholm (Cal. Bar No. 336151)

11                                    SHEPPARD MULLIN RICHTER & HAMPTON LLP
                                      Four Embarcadero Center, 17th Floor

12                                    San Francisco, CA 94111-4109
                                      Telephone:    (415) 434-9100

13                                    Facsimile:    (415) 434-3947

14                                    Richard L. Scheff (admitted pro hac vice)

15                                    Jonathan P. Boughrum (admitted pro hac vice)
                                      David F. Herman (admitted pro hac vice)

16                                    Michael C. Witsch (admitted pro hac vice)
                                      RMSTRONG TEASDALE LLP

17                                    2005 Market Street
                                      One Commerce Square, Floor 29

18                                    Philadelphia, PA 19103
                                      Telephone: (267) 780-2000

19

20                                    *Counsel to Defendants Michael Stinson, Linda Stinson,*
                                      *7HBF No. 2, Ltd., Stephen J. Shaper, L. Stephen Haynes,*

21                                    *and Haynes Investments, LLC*

22

23

24

25

26

27

28